IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| KERRY B. MATERN,<br><br>        Plaintiff,<br><br>    vs.<br><br>MICHAEL ASTRUE, Commissioner of Social Security,<br><br>        Defendant. | MEMORANDUM DECISION<br>and REPORT AND RECOMMENDATION<br><br>Case No: 2:06-cv-695 DB<br><br>District Judge Dee Benson<br><br>Magistrate Judge David Nuffer |

      Plaintiff Kerry Matern seeks judicial review of the decision of the Commissioner denying his applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.[1]  Under 28 U.S.C. § 636(b)(1)(B).  District Judge Dee Benson referred[2] this case to the magistrate judge for a report and recommendation on all dispositive issues.

      Matern filed applications for disability insurance benefits and supplemental security income alleging disability since October 1, 2001.[3]  The Social Security Administration denied the applications initially and on reconsideration.[4]  In August 2005, Matern received a de novo hearing before an administrative law judge (ALJ), who issued a decision on March 17, 2006, finding Matern could perform a limited range of light work and was therefore not disabled

---

[1] 42 U.S.C. §§ 401-434, 1381-1383c.

[2] Order of Reference, docket no. 13, filed 8/8/2007.

[3] R. 49, 446, 489.

[4] R. 28-30, 33-36.

within the meaning of the Social Security Act.[5] The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision.[6] Matern filed for judicial review in this court alleging that the ALJ did not apply the correct legal standards and the findings are not supported by substantial evidence.

Specifically, Matern argues that the ALJ: (1) erred in finding that a substance use disorder was a contributing factor material to the determination of disability; (2) failed to consider Listing 12.05C; (3) failed to identify support for finding that substance abuse was a contributing factor material to the determination of disability; (4) was biased against him; (5) failed to consider his physical impairments, singly and in combination; (6) failed to properly consider the opinion of Dr. Albu-Zaruba; and (7) failed to obtain a reasonable explanation for conflicts between the vocational expert's testimony and the *Dictionary of Occupational Titles* pursuant to Social Security Ruling ("SSR") 00-4p.

The record in this case contains substantial evidence that Matern has suffered from a combination of physical and mental impairments for most of his life.[7] He is extremely low functioning in intellectual, visual and verbal skills.[8] He also suffers from many physical limitations including near total blindness of the left eye and an injured left arm with loss of shoulder strength and sensation in the left hand.[9] Due to his many limitations, Matern scored

---

[5] R. 15-22.

[6] R. 7-9.

[7] *See, e.g.,* R. 209-37 (vocational evaluation); R. 262-72 (Gummow evaluation); R. 273-76 (Staley evaluation).

[8] *See* Gummow evaluation, R. 262-72.

[9] *See* Staley evaluation, R. 276.

below average and in the lowest test ranges on the vocational evaluation.[10]

Additionally, Matern has a long history of drug abuse, but from 2003-2005 successfully completed an intensive outpatient treatment and aftercare program through the Salt Lake County Drug Court.[11]  Drug Court and Job Services referred Matern to the Utah State Office of Rehabilitation Services.  In turn, Rehabilitation Services referred Matern to Linda Gummow, Ph.D., for a psychological evaluation.  The ALJ relied upon[12] Gummow's evaluation in determining that Matern's "substance use disorder(s) is a contributing factor material to the determination of disability."[13]

The ALJ put great weight on a statement Dr. Gummow made in her evaluation. Specifically, the ALJ stated "the consulting examiner said that the claimant's disability was not an exclusive result of his substance abuse, but it 'did not improve the situation,' which I interpret that it is material under Public Law 104-121 (Exhibit 18F/154)."[14]  The quoted portion of Dr. Gummow's evaluation was made in the closing paragraph of her eleven page report. Her complete statement, in context, reads:  "Mr. Matern's disabilities are not the exclusive result of substance abuse.  Certainly substance abuse did not improve his situation, **but he has a clear history of developmental disability**.  He lacks the cognitive resources to make good choices

---

[10] *See* Vocational Evaluation, R. 209-37.

[11] R.278-431.  Specifically, drug testing in this program from October 2003 through March 2005 show only two positive results out of 194 tests. R. 279-82.

[12] R. 19.

[13] R. 22.

[14] R. 19.  The ALJ also cites that the evaluation was in March 2003, when the evaluation and report was prepared in July 2003. See full evaluation as exhibit 16F, R. 261-72.  Exhibit 18F/154 (R. 431) is just the last page of the full evaluation submitted with various other records and evaluations.

without external structure."[15]

The complete evaluation finds that Matern has "profound cognitive impairments," has "borderline intellectual skills (low end of borderline range)," and "lacks both visual and verbal reasoning skills."[16] The evaluation also found that "Mr. Matern's situation is further complicated by multiple medial issues affecting his upper and lower extremities" and "significant visual problems" that have contributed to "a number of occupational injuries such as falls, pulls, etc."[17]

Regarding Matern's substance abuse, the evaluation acknowledges that Matern "is recovering from substance abuse."[18] But Dr. Gummow goes on to find that "he has symptoms of Major Depression" and that "Mr. Matern may have been treating symptoms of depression with stimulants."[19] Taken in context with the entire evaluation, Dr. Gummow's statement that "substance abuse did not improve his situation" does not mean Matern's disability is rooted in drug abuse. Dr. Gummow is stating that Matern's low intellectual skills and physical impairments were not aided by the drug use. She further states that the substance abuse was a self treatment. She does not say it is a cause of his disability. Dr. Gummow's meaning was ignored or misinterpreted by the ALJ.

This misinterpretation of the effects of substance abuse is even more troubling when viewed in light of the statement the ALJ made on the record. Towards the end of the hearing,

---

[15]R. 272, 431 (emphasis added).

[16]R. 271.

[17]*Id.*

[18]R. 272.

[19]*Id.*

this exchange took place:

> ATTY: -- and so, I, I, I just want to add the one comment that I, I believe that his impairments would be there unrelated to his drug use, and he - -
>
> ALJ: Physical, might; mental, no.
>
> ATTY: Well, he's got the IQ's in the 60's.
>
> ALJ: I realize that, but drugs are going to affect him mentally.
>
> ATTY: Okay, all right.
>
> ALJ: And that's why people take drugs, is to be affected mentally.
>
> ATTY: Dr. Gumow [sic] commented that he thought - - she thought he may be self-medicating his depression with the stimulants.
>
> ALJ: Well, that's good. If he continues to self-medicate, then I'm not - - you know.
>
> ATTY: Well, hopefully, he has - -
>
> ALJ: We have a lot of - -
>
> ATTY: - - turned a new page.
>
> ALJ: - - self-medication in California with marijuana.
>
> ATTY: Yes, I - -
>
> ALJ: And guess what. I deny them. So - -[20]

From this exchange, it appears that the ALJ has an opinion about claimants with history of drug use, and that his preconceived opinion predetermined the decision in this case.

---

[20] R. 527.

Matern also argues that the ALJ failed to consider that he met Listing 12.05 C for mental retardation.[21] Matern's counsel tried to argue at the hearing[22] that he met the listing, relying on Dr. Gummow's evaluation[23] and the vocational rehabilitation report.[24] The ALJ stated he would consider the argument in closing,[25] but never took any more information regarding the listing. Dr. Gummow's evaluation finds that Matern scored in the mild mental retardation range on his test scores. She found that he met the first criterion of a confirmed onset before age 22 and that his I.Q. was below 70 to meet the second requirement.[26] She then notes that he may be "able to function at a level beyond that of individual with Mild Mental Retardation"[27] but she "did not measure his adaptive living skills."[28] The vocational rehabilitation report did contain measurements of his adaptive living traits indicating that most behaviors were below average.[29]

---

[21]   12.05 *Mental Retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22 . . .[and one of the following] . . .

C. A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function;

20 C.F.R. pt. 404, subpt. P, app. 1.

[22]R. 488-89.

[23]R. 262-72.

[24]R. 209-37.

[25]R. 488.

[26]R. 271.

[27]*Id.*

[28]*Id.*

[29]R. 233-34.

Counsel wanted to use these two reports to show that Matern met Listing 12.05 C.[30]  Having this brought to his attention in the hearing, the ALJ should have considered whether Matern met the listing, yet he failed to address in his decision whether he considered, adopted or rejected this argument.

Matern claims that the ALJ erred by failing to consider his physical impairments singly and in combination.  Although the ALJ states he considered the physical impairments singly and in combination, he also states that none of the impairments, singly or in combination would meet the required medical listing Matern stopped the substance abuse.[31]   However, the ALJ failed to analyze how substance abuse was a contributing factor to Matern's physical impairments.  This is significant, because the ALJ suggests on the record that Matern's physical impairments "might" not be affected by substance abuse.[32]  The ALJ completely fails to discuss the link of substance abuse to any of Matern's physical impairments.

Next, Matern contends that the ALJ improperly rejected the opinion of the treating physician, Dr. Albu-Zaruba.  Although an ALJ may reject a treating physician's opinion,[33] in this case, the ALJ's complete disregard of Dr. Albu-Zaruba's opinion conflicts with the ALJ's own findings.  The decision states: "The treating physician's evaluation that the claimant is severely disabled to the point where he can only walk one-half a block at a time is discounted because the

---

[30]R. 489 (Counsel explaining that she wanted to use exhibit 12F/25-26 (R. 233-34) "to fill in where she [Gummow] didn't do any testing on the adaptive behaviors.").

[31]See R. 20, number 7.

[32]R. 527.

[33]See *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987).

doctor never mentions the substance abuse . . . ."[34]

Dr. Albu-Zaruba's evaluation was completed on April 15, 2005.[35] According to the ALJ's own findings, substance abuse was no longer a material factor after February 25, 2005.[36] Therefore, Dr. Albu-Zaruba's failure to mention substance abuse is not a valid reason to totally reject the treating physician's opinion.

Matern's final claim is that the ALJ failed to obtain a reasonable explanation for conflicts between the testimony of the vocational expert (VE) and the *Dictionary of Occupational Titles (DOT)* as required under Social Security Ruling 00-4p. When there is a conflict between the VE's evidence and the *DOT*, SSR 00-4p requires the ALJ to elicit a reasonable explanation for the conflict before relying on the VE's testimony to support a decision. In this case, the ALJ failed to directly ask the VE whether the *DOT* was consistent with his testimony. However, this error appears harmless because Matern has failed to identify any conflicts between the *DOT* and the VE's testimony.

## Recommendation

After a complete review of the record, it is recommended that the Commissioner's decision be REVERSED and REMANDED for further administrative proceedings in accordance with this report.

IT IS FURTHER ORDERED that the case be remanded to a new ALJ for the rehearing.

---

[34] R. 20.

[35] R. 438.

[36] R. 19.

**Notice**

Copies of this Report and Recommendation are being mailed to the parties, who are hereby notified that they have the right to object to the Report and Recommendation. The parties are further notified that they must file any objections to the Report and Recommendation with the clerk of the district court, pursuant to 28 U.S.C. § 636(b), within ten (10) days after receiving it. Failure to file objections may constitute a waiver of those objections on subsequent appellate review.

January 27, 2009.

BY THE COURT:

_____
David Nuffer
U.S. Magistrate Judge